IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOSEPH THOMLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Act. No. 1:17-cv-799-ECM |
| | ) | (WO) |
| CITY OF DALEVILLE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

Now pending before the Court is a motion to dismiss filed by the Defendant City of Daleville, the Daleville Police Department, and Officer Ryan Phillips on December 19, 2017. (Doc. 7).

The Plaintiff, Joseph Thomley ("Thomley"), filed a complaint bringing 42 U.S.C. § 1983 claims for unlawful search and seizure (count one), for excessive force (count two), and for false arrest/false imprisonment (count three), a state-law false arrest/false imprisonment claim (count four), a state-law assault and battery claim (count five), and a 42 U.S.C. § 1983 claim against the City of Daleville and the Daleville Police Department for failure to supervise and failure to train (count six).

Upon consideration of the complaint, the motion, and the briefs of the parties, and for the reasons that follow, the Defendants' motion to dismiss is due to be GRANTED as to the federal claims, and the Court will decline to exercise supplemental jurisdiction over the state-law claims.

## I.   FACTS

The facts alleged by the Plaintiff in the complaint are as follows:[1]

On or about October 16, 2016, Thomley was driving his vehicle home to get a tow strap and stopped at a stop sign.  A girl ran in front of his vehicle and then jumped into the passenger seat of his vehicle. The girl was screaming, "please get me away from him," and Thomley observed a shirtless man running down the street.  Thomley also observed that the girl "was red all over and covered in scratches." (Doc. 1 at ¶8).  Thomley drove a distance of one mile to his home.  When he stopped the vehicle at his house, the girl jumped out and ran across Thomley's neighbor's yard.  Thomley began walking to obtain the tow strap when a silver SUV pulled into the driveway.  Defendant Ryan Phillips ("Phillips") got out of his vehicle and drew his gun.  The complaint alleges that "Officer Ryan Phillips began asking the Plaintiff questions about the female who had just got[ten] out of his vehicle." (Doc. 1 at ¶11).  Thomley said that he did not know who the female was.  Phillips then asked Thomley to take his knife out of his pocket. Thomley did so. Phillips then asked him to move to the back of his truck and Phillips handcuffed Thomley.  Phillips then began "jabbing his hands in the Plaintiff's pockets" while Thomley was sitting on the tailgate and

---

[1]     This case presents an unusual situation in which the Plaintiff, Thomley, relies on facts in his brief in opposition to the motion to dismiss which are not present in the complaint and, in some instances, contradict allegations in the complaint. The Defendants object to Thomley's reference to facts which are not included in the complaint. The Court agrees that facts not included in the complaint cannot be relied upon to defeat a motion to dismiss. *See Speaker v. U.S. Dept of Health & Human Servs. Centers for Disease Control & Prevention,* 623 F.3d 1371, 1379 (11th Cir. 2010) ("[I]t is generally true that the scope of the review must be limited to the four corners of the complaint.").

Thomley told him he did not have permission to search him. Thomley asked that Dale County officers be called to the scene.  Thomley then told Phillips that he was trespassing and in response Phillips took Thomley off of the tailgate of his truck by his pocket. (Doc. 1 at ¶17).  Thomley told Phillips to keep his hands off him and then "Phillips began to use force on the Plaintiff." (Doc. 1 at ¶17).

Phillips put Thomley in a choke hold, kneed Thomley, strangled him, slammed him to the ground face first, and started asking questions about the unknown girl again. Phillips "stated that he was trying to get the Plaintiff's identification and that the Plaintiff pulled away from him." (Doc. 1 at ¶19).  "The Plaintiff responded with 'I am not resisting. My name is Joseph Thomley.'" (Doc. 1 at ¶19).  Phillips asked the neighbor if she knew Thomley and she said that she did, but she did not know the girl who ran across her yard.

Thomley sat in handcuffs in his front yard for 45 minutes until Dale County officers arrived and released him. He asked Phillips if he was going to jail and Phillips asked if Thomley was going to sue him.  Thomley alleges that he suffered "bodily injury," but pleads no facts about any injuries sustained.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U. S. at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U. S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

## III.   DISCUSSION

The Defendants have moved to dismiss the complaint in its entirety. In their initial brief, the Defendants pointed to several claims as being due to be dismissed and Thomley either explicitly conceded the point or did not respond to those arguments. Specifically, Thomley concedes that the punitive damages claims against the City are due to be dismissed, (doc. 7 at 13), and has not responded to arguments that the claims against the Daleville Police Department are not cognizable because it is not a suable entity, *see Howard v. City of Demopolis, Ala.*, 984 F. Supp. 2d 1245, 1253 (S.D. Ala. 2013) (finding police departments are not a proper legal entity capable of being sued); that claims against Phillips in his official capacity as redundant of claims against the City of Daleville, *see Barnes v. City of Dothan*, 795 F. Supp. 2d 1276, 1283 (M.D. Ala. 2011)(dismissing claims against the individual defendants in their official capacities because the city had been

4

joined as a defendant); and that any Eighth Amendment claim is due to be dismissed

because Thomley was not in prison. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792

F.3d 1313, 1328 (11th Cir. 2015) (stating the Eighth Amendment only applies after a

citizen has been convicted of a crime). The grounds pointed to by the Defendants establish

cause for dismissal of those federal claims and, furthermore, by failing to respond,

Thomley has abandoned those claims. *See Smith v. Secretary Dep't of Corr*., 572 F.3d

1327, 1342 (11th Cir. 2009).  The motion to dismiss is, therefore, due to be GRANTED as

to the federal claims for punitive damages against the City of Daleville, the federal claims

against the Daleville Police Department, the federal claims against Phillips in his official

capacity, and the Eighth Amendment claim.[2]

The Court now addresses the grounds for dismissal asserted as to the federal claims

brought against Phillips individually and against the City of Daleville, as well as the state-

law claims.

## A. Federal Claims Against Phillips Individually

Phillips has invoked the defense of qualified immunity.  Qualified immunity

protects government officials from suit if they are "performing discretionary functions"

and "their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982).

---

[2]      The Court does not address these grounds for dismissal as they relate to the state-law claims because, as will be addressed below, the Court finds it appropriate to decline to exercise supplemental jurisdiction over the state-law claims.

There is no dispute that Phillips was acting within his discretionary authority.  *See Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002) (stating, "there can be no doubt that Ferraro was acting in his discretionary capacity when he arrested Lee.").

Once it is determined that a defendant was acting within his discretionary authority, whether the defendant is entitled to qualified immunity requires a two-pronged inquiry. The first prong is whether the facts, "[t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a [federal] right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The second prong of the qualified-immunity analysis asks whether the violation of the federal right was "clearly established" at the time of the violation. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  The questions do not have to be addressed in order.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

1.      Fourth Amendment Unreasonable Seizure Claim

In the context of a false arrest claim, "the dispositive question is whether it was already clearly established, as a matter of law, that at the time of Plaintiff's arrest, an objective officer could not have concluded reasonably that probable cause existed to arrest Plaintiff under the particular circumstances Defendants confronted."  *Gates v. Khokhar*, 884 F.3d 1290, 1303 (11th Cir. 2018).  Officers who make an arrest without probable cause "are entitled to qualified immunity if there was arguable probable cause for the arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004); *see also Gates*, 884

6

F.3d 1304. "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the [defendant] could have believed that probable cause existed to arrest." *Gates,* 884 F.3d at 1298. If a detention does not constitute an arrest, under *Terry v. Ohio*, 392 U.S. 1 (1968), an officer may detain a suspect when he has reasonable suspicion that the suspect was involved in or is about to be involved in criminal activity. In the context of a *Terry* stop, "[w]hen an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop." *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir. 2000).

In this case, Thomley argues in his brief that he was not arrested, although he alleged in the complaint that he was arrested. (Doc. 1 at ¶45). Because the allegation of "arrest" is conclusory, the Court will examine the facts alleged to determine if the complaint plausibly alleges an arrest. In order to determine if an arrest occurred, the Court considers whether the suspect is "subjected to restraints comparable to those associated with a formal arrest." *United States v. Acosta*, 363 F.3d 1141, 1149 (11th Cir. 2004). In determining whether a seizure is an arrest, courts consider the following four non-exclusive factors: (1) the law enforcement purposes served by the detention; (2) the diligence with which the police pursued their investigation; (3) the scope and intrusiveness of the detention; and (4) the duration of the detention. *Id.* at 1146 (quotation and citations omitted). While the use of handcuffs does not necessarily transform a detention into an arrest, restriction of movement is a factor to be taken into account in evaluating the reasonableness of steps taken to ensure safety. *Id.* at 1147.

The Court concludes, considering the relevant factors, that the complaint plausibly alleges an arrest through the allegations of Phillips' initially pointing a gun at Thomley, Phillips' actions in pursuing questioning, the use of handcuffs, and the restriction of Thomley's movement. *See id.* The Court will, however, examine the pleaded facts under both the arguable probable cause and arguable reasonable suspicion standards.

Thomley argues in his brief that Phillips never saw the unknown girl in Thomley's presence and had no justification for pulling into Thomley's yard.  He also argues that Phillips never observed the unknown girl get into or out of Thomley's vehicle and that the unknown girl was nowhere near Thomley at the time Phillips arrived on the scene. (Doc. 13 at 16).  These are critical points of his opposition to the motion to dismiss, but they are points which are not supported by the allegations of the complaint.

As earlier noted, in construing a complaint, the Court must accept all well-pleaded facts and all reasonable inferences are construed in the light most favorable to the plaintiff. *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).  Thomley alleges in the Complaint that he stopped his vehicle and a girl jumped out and ran across the neighbor's yard. (Doc. 1 at ¶9).  As Thomley walked from the vehicle to get a tow strap, Phillips pulled into the driveway, pulled out his gun, and "began asking the Plaintiff questions about the female who had just got[ten] out of his vehicle." (Doc. 1 at ¶11).  The complaint alleges that Thomley told Phillips he did not know who the girl was. (Doc. 1 at ¶11).  The only reasonable inference that can be drawn from those allegations is that

Phillips saw the girl get out of and run away from Thomley's vehicle.[3]  If Phillips did not

see the girl, there would be no reason for him to immediately begin asking about a girl who

had just gotten out of the vehicle.  Even if reading the complaint this way means that

Thomley's own pleading contains facts which defeat Thomley's claim, such an

interpretation is consistent with Eleventh Circuit law. *See Gill as Next Friend of K.C.R. v.

Judd*, 941 F.3d 504, 512 (11th Cir. 2019) (pointing to a previous decision in which the

"Court explained: 'This complaint is plagued not by what it lacks, but by what it contains.

All of the paths to relief which the pleading suggests are blocked by the allegations and the

attached documents themselves, without more.'").[4]

Pointing to the facts as pleaded, the Defendants cite the Court to Alabama statutes

defining offenses such as harassment, assault, menacing, domestic violence, and unlawful

imprisonment, and assert that Phillips had arguable probable cause to believe that one of

those offenses had been or was being committed.  Considering the facts as alleged, namely,

---

[3]      The Defendants also urge the Court to consider that the girl was described as being red all over with scratches on her skin. While it seems a reasonable inference that the red color and the scratches observed at the beginning of a drive which lasted for one mile would still be present at the end of the drive, without facts to show Phillips' proximity to the girl when she left the vehicle and ran across the yard, the Court has not considered those facts as being within Phillips' knowledge.  The Court also has not considered Thomley's statement in his brief that Phillips did not receive a call about the girl, because that is not alleged in the complaint.

[4]      "[I]t is axiomatic that a plaintiff cannot amend the complaint by arguments of counsel made in opposition to a motion to dismiss." *Eiras v. Fla*., 239 F. Supp. 3d 1331, 1342 (M.D. Fla. 2017) (citation omitted).   Thomley has not sought to amend his complaint. The Court is aware amendment is to be allowed when a complaint is "so vague and ambiguous that [the defendants] [could] not reasonably be required to frame a responsive pleading." *Byrne v. Nezhat*, 261 F.3d 1075, 1128 (11th Cir. 2001), *abrogated on other grounds by Douglas Asphalt Co. v. QORE, Inc*., 657 F.3d 1146 (11th Cir. 2011).   The issue here, however, is not that the allegations of the complaint are vague, but that Thomley has relied on a version of facts in the arguments in his brief which contradicts the facts alleged in his complaint.

that Phillips saw the girl jump out of Thomley's vehicle and run away, and when the officer asked Thomley, who was visibly armed with a knife, about this girl who had just gotten out of his vehicle, Thomley's response was that he did not know the girl, the Court concludes that the facts support that there was arguable probable cause for an arrest. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (holding, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). It is well settled that "if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000). Here, the Court has been pointed to no case law which has staked out a bright line to put Phillips on notice that he lacked probable cause to arrest under the facts which are alleged. Instead, significantly, Thomley does not argue that the facts as alleged in the complaint fail to establish arguable probable cause, but instead contradicts the facts in advancing an argument that there was no arguable probable cause.

Alternatively, the facts alleged in the complaint support arguable reasonable suspicion for a traffic stop. *Jackson*, 206 F.3d at 1165. Thomley argues that even if Phillips had a reasonable suspicion to stop him, the detention lasted too long. The Defendants respond that this theory was not pleaded in the complaint, but that even if it were, there is not controlling precedent which clearly establishes that the alleged detention is unreasonable under the circumstances, particularly because the complaint alleges that

Thomley asked Phillips to call Dale County law enforcement, and 45 minutes was the amount of time which elapsed until law enforcement's arrival.

Under Supreme Court precedent, an officer's actions during a traffic stop must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20. Furthermore, the duration of the traffic stop must be limited to the time necessary to effectuate the purpose of the stop. *United States v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir.1999). The Eleventh Circuit has previously concluded that a stop of 50 minutes was not so long so as to invalidate a detention. *See United States v. Hardy*, 855 F.2d 753, 761 (11th Cir. 1988). This Court is not aware of any binding caselaw which has found unlawful a detention under the facts as alleged in the complaint. The Court concludes, therefore, that Phillips is entitled to qualified immunity on the unlawful seizure claims under both arguable probable cause and arguable reasonable suspicion analysis.

2. Fourth Amendment Unreasonable Search Claim

The facts alleged in the complaint regarding the search of Thomley are that Phillips told Thomley to remove a knife, Thomley did so, and then with Thomley handcuffed, Phillips began jabbing his hands in Thomley's pockets even though Phillips said he did not have permission to search him. (Doc. 1 at ¶¶14, 15).

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." *Riley v. California*, 573 U.S. 373, 383 (2014). The Eleventh Circuit has held in an unpublished opinion that where a "warrantless arrest was supported

11

by at least arguable probable cause," an officer "was also entitled to search . . . incident to arrest." *Moreno v. Turner*, 572 F. App'x 852, 857 (11th Cir. 2014); *see also Rance v. Mays*, 2016 WL 10537600, at *7 (S.D. Fla. 2016) (search incident to arrest was lawful where officer had arguable probable cause to arrest).  Under the facts as pleaded, as discussed above, there was at least arguable probable cause to arrest, and Phillips witnessed Thomley with a knife before putting his hands in his pockets. Therefore, the motion to dismiss is also due to be GRANTED as to the unlawful search claim.

       3.      Fourth Amendment Excessive Force Claim

"In determining the reasonableness of the force applied, [courts] look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009).  Courts consider, among other things, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386 (1989).  There are also three factors for determining if the force used by an officer in making an arrest was objectively reasonable: "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted."  *Stephens v. DeGiovanni*, 852 F.3d 1298, 1324 (11th Cir. 2017).

There are two ways for a party to show that the law clearly established that a particular amount of force was excessive: (1) point to a materially similar case that has

already decided that what the police officer was doing was unlawful or (2) under a narrow exception, show that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law. *Lee v. Ferraro*, 284 F.3d 1188, 1198–99 (11th Cir. 2002).

Thomley's argument that there was excessive force hinges largely on his characterization of the facts that there was no reason to arrest or stop him because the unknown girl was not seen by Phillips.  As noted above, however, under the facts as alleged in the complaint, Phillips approached Thomley and asked him about the girl who had just gotten out of Thomley's vehicle, creating a reasonable inference that he saw the girl.  This is not a case of an arrest without probable cause or a stop without reasonable suspicion in which any use of force would be inappropriate.  *See Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000).  In other words, although Thomley has argued any force was unreasonable because there was no justification for any detention, the facts as alleged do not support that theory.

Thomley also challenges the force used by Phillips because Phillips choked, strangled, and slammed Thomley while he was handcuffed. (Doc. 13 at 25).  When there is a lawful stop, a minimal amount of force cannot remove an officer's entitlement to qualified immunity.  *Nolin*, 207 F.3d at 1258.  For example, the Eleventh Circuit has concluded that it is not unlawful for some force to be used even when handcuffs have been used and even if there is no resistance. *See Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993), *modified*, 14 F.3d 583 (11th Cir. 1994) (explaining that "[o]nce

Lirio was handcuffed and taken outside, no further force was needed. But, even though pushing Lirio against the wall might have been unnecessary, this pushing was not plainly unlawful."). Even resistance which is only verbal is considered by courts in evaluating a use of force. *See, e.g., Alexandre v. Ortiz*, 2019 WL 5076354, at *3 (11th Cir. Oct. 10, 2019) (noting that detainee "yelled 'we ain't going home tonight,' 'we are taxpayers,' and 'don't take this bullshit from them,' and told the officers to '[g]et the fuck out of here and do your business," in reasoning that a reasonable officer could think he posed a threat to other officers and to the crowd); *Stephens*, 852 F.3d 1298, 1327 (11th Cir. 2017) (affirming use of force where arrestee "was cooperating by responding to all Deputy DeGiovanni's inquiries and not resisting whatsoever, not even raising his voice."). The Eleventh Circuit has stated in an unpublished opinion that "an officer need not wait until he is attacked physically before determining reasonably that he is in imminent danger of serious injury." *Wilson v. Miller*, 650 F. App'x 676, 680 (11th Cir. 2016).

The facts alleged in the complaint are that a girl ran from Thomley's vehicle while Thomley was armed with a knife. Subsequently, Phillips pointed a gun at Thomley and ultimately handcuffed him. Thomley told Phillips he did not have permission to search him, Thomley told Phillips he was trespassing, and Thomley told Phillips that he should keep his hands off of him. The complaint alleges that it was after Thomley told Phillips to keep his hands off of him that Phillips began to "use force" by using a choke hold, kneeing the plaintiff, strangling him, slamming him to the ground, and asking questions about the girl. (Doc. 1 at ¶19). While Thomley refers to injuries he said he sustained in his brief, no allegation of any injury is included in the complaint, other than the conclusory statement

14

Case 1:17-cv-00799-ECM-WC   Document 22   Filed 01/03/20   Page 15 of 20

that he suffered "bodily injury." (Doc. 1 at 7); *see Holmes v. Hale*, 701 F. App'x 751, 755 (11th Cir. 2017) (stating that a conclusory allegation of excessive force does not provide any factual content and that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (quotation omitted).

The facts as asserted in the complaint in this case do not allege a use of gratuitous force when a suspect is not resisting arrest and is obeying commands. *Cf. Stephens*, 852 F.3d at 1327-28. Instead, there are facts alleged that some force was used, but no facts of injury sustained as a result of that force, under the circumstances of a previously armed suspect, verbally, if not physically, resisting an officer after a woman fled the suspect's vehicle. Because it is neither readily apparent in the absence of caselaw that Phillips' actions were unlawful, nor has the Court been pointed to a materially similar case that has already decided that what Phillips did was unlawful, Phillips is entitled to qualified immunity on the Fourth Amendment excessive force claim. *Lee*, 284 F.3d at 1198–99.

4.      Fourteenth Amendment Claim

The Defendants move to dismiss the Fourteenth Amendment claim on the basis that the subject matter of the claim is covered by the Fourth, not the Fourteenth Amendment. Thomley responds that a separate claim can be stated, citing to *McKinney v. DeKalb Cnty.*, 997 F.2d 1440, 1442 (11th Cir. 1993). Even assuming a separate Fourteenth Amendment claim can be stated, the allegations of the complaint do not state a claim for violation of the Fourteenth Amendment because there are no facts alleged of a purpose to cause harm. *See Vaughan v. Cox*, 343 F.3d 1323, 1333 (11th Cir. 2003) (stating that a violation of substantive due process will be found only when a plaintiff can show that the officer had

"a purpose to cause harm unrelated to the legitimate object of arrest."). As previously discussed, the facts alleged are inconsistent with Thomley's argument that Phillips had no purpose in arresting him or in using any force whatsoever. The allegation in the complaint that Phillips' actions "shocked the conscience," lacks sufficient factual content under Rule 8. *See Holmes*, 701 F. App'x at 755. The lack of sufficiency of allegations to support a Fourteenth Amendment violation is also apparent in light of the Court's finding that the complaint does not state violation of clearly established law for purposes of a Fourth Amendment claim. *See Jordan v. Cobb Cty., Georgia*, 227 F. Supp. 2d 1322, 1336 (N.D. Ga. 2001) (stating "in theory, conduct that is unreasonable might not necessarily be wanton, arbitrary, or malicious. Thus, certain conduct might violate the Fourth Amendment, but not the Fourteenth. The converse—that conduct could be wanton and arbitrary, but not unreasonable—appears to be unlikely, if not logically impossible."). In analyzing qualified immunity in the context of a Fourteenth Amendment claim, another district judge determined that the case law has established that an officer cannot inflict punishment on a detainee out of malicious or sadistic motivation. *Id.* at 1343. The Court is persuaded by the extensive analysis in that opinion and, finding insufficient facts alleged to support an inference of malicious or sadistic motivation, the Court concludes that the motion is due to be GRANTED as to the Fourteenth Amendment claim.

## B. Federal Claims Against the City

Although count six of the complaint is stated as a separate claim of failure to supervise and train, the count is pleaded as a way to hold the City of Daleville liable for Phillips' actions. (Doc. 1. at 9). "A municipality is not automatically liable under Section

16

1983 even if it inadequately trained or supervised its employees and those employees violated plaintiff's constitutional rights." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). "[S]howing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Instead, the failure to train must be a city policy. *Gold,* 151 F.3d at 1350. Because there rarely is a written policy of inadequately training employees, a plaintiff may prove a policy by showing that a failure to train "evidenced a 'deliberate indifference' to the rights of its inhabitants." *Id.* To establish deliberate indifference, a plaintiff must "present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Id.*

"That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390–91 (1989). There must be a "glaring omission," not merely an "imperfection" in the training program. *Gold*, 151 F.3d at 1352 (citation omitted).

A city's notice that there is a need to train is usually established with evidence of a widespread pattern of similar constitutional violations by untrained employees. *Connick*, 563 U.S. at 61. Thomley does not plead a pattern of violations, [5] but instead relies on the

---

[5]     In his brief, Thomley refers to another complaint against Phillips by a Ronald Hallford. These facts are not alleged in the complaint. Even if the Court were to consider the argument, however, the brief states that the incident with Ronald Hallford occurred in July 2017, which is after the facts of this case and, therefore, could not establish a widespread pattern of similar constitutional violations so as to put the City of Daleville on actual or constructive notice at the time of Phillips' actions in this case. *Connick*, 563 U.S. at 61.

Supreme Court's statement that based on the duties of specific officers, it may be that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," that the city can reasonably be said to have been deliberately indifferent to the need.  *City of Canton,* 489 U.S. at 390.  The Court gave only one example, namely, that cities know to a moral certainty that the police will be required to arrest fleeing felons, and give them firearms for that task, so "the need to train officers in the constitutional limitations on the use of deadly force," can be said to be " 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." *Id.* at 390 & n.10.

The Eleventh Circuit has adhered to a narrow view of *City of Canton.  See Borton v. City of Dothan*, 734 F. Supp. 2d 1237, 1256 (M.D. Ala. 2010) (noting the Eleventh Circuit's "clear reluctance to extend failure-to-train liability.").  The Eleventh Circuit has declined to extend failure-to-train liability to situations such as responses to complaints about the use of handcuffs, *see Gold*, 151 F.3d at 1352, or the use of hobbling restraints. *Lewis v. City of W. Palm Beach, Fla*., 561 F.3d 1288, 1293 (11th Cir. 2009).

In this case, Thomley has pleaded in the complaint that there is a likelihood that violations during detainment will recur so that there must be proper training in legal searches and seizures. (Doc. 1 at 9).  Even assuming that a constitutional violation has been sufficiently pleaded in this case, this Court is persuaded that the allegations of this case fall outside of the narrow range of cases in which the need for training is "so obvious" that training is required even in the absence of notice of prior constitutional violations.  *Gold*, 151 F.3d at 1352.  Therefore, the Court concludes that Thomley has failed to plead a basis

of liability on the part of the City of Daleville for a violation of federal law and the motion

to dismiss is due to be GRANTED as to the federal claims against the City of Daleville.

### C. State-Law Claims

Where all federal claims are dismissed prior to trial, district courts are encouraged

to dismiss any remaining state-law claims. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–

89 (11th Cir. 2004). Before dismissing the remaining state-law claims, the Court must

consider the factors of judicial economy, convenience, fairness, and comity. *See Ameritox,*

*Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 537 (11th Cir. 2015).

"Both comity and economy are served when issues of state law are resolved by state

courts." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002).  "Federal

courts are (and should be) loath to wade into uncharted waters of state law, and should only

do so when absolutely necessary to the disposition of a case." *Ameritox*, 803 F.3d at 540.

Indeed, the Supreme Court has declared that "[n]eedless decisions of state law should be

avoided as a matter of comity and to promote justice between the parties, by procuring for

them a surer-footed reading of applicable law." *United Mine Workers v. Gibbs*, 383 U.S.

715, 726 (1966).  In this case, there are state-law immunity issues which are best resolved

by the state courts.  Further, there is nothing before the Court to suggest that the remaining

factors—convenience and fairness—weigh in favor of retaining subject-matter jurisdiction

where no discovery has been conducted.  Moreover, the Court can discern no possibility of

significant prejudice to any party, particularly in light of § 1367(d)'s provision tolling the

statute of limitations on any of the state-law claims. *See* 28 U.S.C. § 1367(d).  Accordingly,

19

the Court declines to exercise supplemental jurisdiction over the state-law claims pursuant to § 1367(c)(3).

## IV. CONCLUSION

For the reasons discussed above, it is hereby ORDERED as follows:

1.  The Motion to Dismiss (Doc. 7) is GRANTED as to the federal claims and those claims are DISMISSED with prejudice.

2.  The Court declines exercise supplemental jurisdiction over the state-law claims pursuant to § 1367(c)(3) and the state-law claims are DISMISSED without prejudice.

A separate judgment will be entered.

Done this 3rd day of January, 2020.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE